USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  July 9, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                         :

DAVID McCREERY,                     :
                         :

                     Plaintiff,   :
                         :            13 Civ. 3254 (KPF)

         v.                      :

                         :           OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,   :

                         :

                   Defendant.   :

                         :

------------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Plaintiff David McCreery, proceeding *pro se*, filed this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") that denied Plaintiff's application for Social Security Disability Insurance benefits based on a finding that Plaintiff was not disabled under the Act.  Defendant has moved, unopposed, for judgment on the pleadings requesting that the Commissioner's decision be upheld.  Because the Commissioner's decision is supported by substantial evidence, Defendant's motion is granted.

## BACKGROUND[1]

### A.   Plaintiff's Physical Impairments and Medical Evaluations

In 1992, Plaintiff was struck in the head by a crane hook while on the job. (SSA Rec. 5).  Shortly after the incident, Plaintiff testified that he began experiencing "funny feelings in [his] head" and recurrent headaches.  (*Id.* at 5, 28).  According to Plaintiff, he was examined by a doctor, and underwent a CAT scan and neurological evaluation, but those examinations revealed no impairments.  (*See id.* at 5-6).

In 2006, approximately 13 years later, Plaintiff indicated that he was still experiencing headaches, which he attributed to the 1992 work-related crane injury.  (*See* SSA Rec. 5-6).  Because he was still experiencing headaches, Plaintiff went for medical evaluation.  In February 2006, a sleep-deprived electroencephalogram ("EEG") was performed on Plaintiff, which revealed that he had bi-temporal slowing and sharp waves, suggesting potential epileptogenic activity (i.e., seizures).  (*Id.* at 180, 188, 216).  Plaintiff was prescribed medication for the reported headaches.  (*Id.* at 180).  Additional EEG monitoring was conducted from July 17 to 22, 2006; all tests returned "normal" results, even when Plaintiff was taken off his prescribed medication. (*Id.* at 194).  In March and May 2006, Plaintiff also had magnetic resonance imaging ("MRI") examinations of the brain, both of which revealed no abnormalities.  (*Id.* at 210-11).  The record does not contain medical

---

[1]   The facts contained in this Opinion are drawn from the Social Security Administrative Record ("SSA Rec.") (Dkt. #19) filed by the Commissioner as part of her answer.

For convenience, Defendant's supporting memorandum is referred to as "Def. Br."  No other documents were filed in support of, or in opposition to Defendant's motion.

evaluations for Plaintiff between 2006 and 2010, and it appears that no such evaluations were conducted.

In May of 2010, Plaintiff began taking days off from work because of the headaches he was experiencing. (SSA Rec. 27). Ultimately, Plaintiff was terminated from his job due to the amount of sick leave he had taken as a result of his headaches. (*Id.*). Plaintiff now contends that he became disabled as of May 22, 2010, due to headaches and back problems. (*Id.* at 100).

In 2010, Plaintiff was evaluated by two doctors. First, on June 24, 2010, Dr. Leena Philip, an internist, evaluated Plaintiff. (SSA Rec. 162). Dr. Philip's report included Plaintiff's reports that he had a history of headaches that he attributed to the 1992 work-related injury, and that he gets headaches daily that range between three to four on a scale of one to ten (with ten being the worst), and that at times he feels like he is "spacing out." (*See id.*). As for back pain, the report indicated that Plaintiff reported having low back pain since age fifteen that occurred suddenly after kicking a basketball. (*Id.*). Plaintiff had never had any x-rays or an MRI to evaluate the back pain, and informed Dr. Philip that he last saw a chiropractor for treatment ten years ago. (*Id.*). Dr. Philip indicated that there was "no radiation of the low back pain; no associated numbness or tingling," and that Plaintiff described the pain as a one to two on a scale of ten being the worst. (*Id.*). The report also documented that Plaintiff has a history of spastic colon since the age 20 and that he has been diagnosed with irritable bowel syndrome. (*Id.*).

Dr. Philip's report indicated that Plaintiff's general appearance and gait were normal; he appeared not to be in any acute distress; and he did not need the use of any assistive devices. (SSA Rec. 163). An x-ray of Plaintiff's spine showed that there was disc-thinning and facet arthropathy in the lower spine. (*Id.* at 165). Dr. Philip's physical examination, however, revealed no abnormalities. (*See id.* at 163-64). After examining Plaintiff, Dr. Philip diagnosed him with (i) a history of low back pain; (ii) a history of chronic headaches; and (iii) a history of irritable bowel syndrome. (*Id.* at 165). The doctor concluded that in her "medical opinion, there [were] no medical limitations for [Plaintiff] at [that] time." (*Id.*).

Plaintiff was also evaluated by Dr. Kishori Shah on April 14, 2011. (SSA Rec. 167-72). Dr. Shah's report summarized Plaintiff's condition with respect to his headaches in a similar fashion as Dr. Philip's report. Dr. Shah reported that Plaintiff advised that his headache symptoms included "spacey feeling, numbness in the face, [and] some pain in the left side of the scalp." (*Id.* at 167). These symptoms were "always there," according to Plaintiff, and got worse when he was very tired. (*Id.*). Plaintiff confirmed that he was not taking any medication except Motrin. (*Id.*).

Plaintiff related to Dr. Shah that he had experienced lower back pain since he was a teenager. (SSA Rec. 167). In contrast to his statements to Dr. Philip, however, Plaintiff reported to Dr. Shah that he was seeing a chiropractor, who had conducted x-rays that returned "negative" results. (*Id.*). Plaintiff described the pain at a level of ten at times, and noted that "[l]ifting

and carrying makes [Plaintiff] have pain in his lower back." (*Id.*).  Plaintiff

reported his history of irritable bowel syndrome.  (*Id.* at 168).  He also reported

that he had episodes of anxiety for the last two to three years and experienced

tremors in his left arm at times for the last year, but had not received

treatment for either of these conditions.  (*Id.* at 170).  An x-ray on Plaintiff's

spine showed "degenerative changes."  Dr. Shah's physical examination,

however, identified no abnormalities.  (*Id.* at 168-69).  Dr. Shah diagnosed

Plaintiff with (i) a history of lower back pain; (ii) a history of headaches;

(iii) irritable bowel syndrome; (iv) a history of anxiety; and (v) a history of left

hand tremors.  (*Id.* at 170).  From this, Dr. Shah concluded that Plaintiff has

"mild restriction for heavy lifting, carrying, and bending over."  (*Id.*).

    Plaintiff testified in connection with his application for benefits that he

has experienced "steady" headaches that have gotten "progressively worse"

since 1992.  (SSA Rec. 28).  He confirmed that since the onset of this claimed

disability (i.e., on May 22, 2010), he has not been prescribed any medication

for his headaches, but rather only takes over-the-counter medications, such as

Motrin, for relief.  (*Id.* at 29).  Plaintiff acknowledged that his condition did not

prevent him from caring for himself or his elderly mother, with whom he lives.

(*Id.* at 31, 108).  Among other things, Plaintiff is capable of helping around the

house by vacuuming, doing the dishes, mowing the grass, going grocery

shopping, preparing meals, and removing snow in the winter.  (*Id.* at 31-32,

108-09).  In his spare time, Plaintiff testified that he watches television and

performs auto mechanic work in his garage.  (*Id.* at 32-33).

**B.     Work History**

The record demonstrates that Plaintiff has held three full-time employment positions since 1995.  (*See* SSA Rec. 101).  From June 1995 through July 1996, Plaintiff was employed as a carpenter for a construction company.  (*Id.*).  Plaintiff then worked as a delivery truck driver from October 1996 through March 1997.  (*Id.*).  Finally, from April 1997 through May 2010, when Plaintiff asserts he became disabled, he worked as a mechanic for an energy service company.  (*Id.*).

Since May 22, 2010, the onset of Plaintiff's alleged disability, he has completed a minimal amount of auto mechanic work from the garage of his home, and also performed mechanic work for one individual during the summertime.  (SSA Rec. 25).  Plaintiff works approximately one day a week, at most, for which he receives about $20 per hour.  (*Id.* at 26).

**C.     Social Security Administrative Proceedings**

On February 3, 2011, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") with the Social Security Administration ("SSA"). (SSA Rec. 78-84).  Plaintiff sought benefits as of May 22, 2010.  (*See id.*).

By letter dated April 28, 2011, Plaintiff was informed that his application for SSDI had been denied because a review of his health problems demonstrated that he was not disabled under the rules.  (SSA Rec. 44).  In the denial letter, the SSA notified Plaintiff that if he disagreed with the decision, he had the right to request a hearing.  (*Id.* at 45).  Plaintiff did just that on July 1, 2011 (*id.* at 48-50), and a hearing was held on March 12, 2012 (*id.* at 18).

Administrative Law Judge ("ALJ") Brian W. Lemoine conducted the hearing, at which only Plaintiff testified. (SSA Rec. 18). At the outset of the hearing, Judge Lemoine informed Plaintiff that he had the right to have a representative at the hearing, and confirmed with Plaintiff that he waived his right to have a representative. (*Id.* at 21-22). The ALJ then asked Plaintiff a series of questions to gather information relevant to the SSA's determination, and also provided Plaintiff with the opportunity to testify as to any other matters that Plaintiff deemed relevant. (*See id.* at 22-23). During the hearing, Plaintiff acknowledged that his application for benefits should have been filed as a workers compensation claim when he was injured in 1992, but that it was too late to make that claim now. (*Id.* at 35).

On March 19, 2012, the ALJ issued his decision denying Plaintiff's application for SSDI (the "March 19 Decision") on the basis that Plaintiff "has not been under a disability, as defined in the Act, from May 22, 2010, through the date of [that] decision." (SSA Rec. 11). On April 19, 2012, Plaintiff requested a review of the March 19 Decision by the Appeals Council. (*Id.* at 4-7). On February 21, 2013, the Appeals Council denied Plaintiff's request for review because it "found no reason under [its] rules to review the [ALJ's] decision." (*Id.* at 1). The Appeals Council informed Plaintiff that because it denied his request for review, the March 19 Decision was the final decision of the Commissioner of Social Security in his case, and that if he disagreed with the decision, he had the right to ask for court review by filing a civil action. (*Id.* at 1-2).

### D.     The Instant Litigation

Plaintiff filed his Complaint on April 26, 2013, seeking review of the March 19 Decision.  (Dkt. #1).  On September 17, 2013, this Court held an initial pretrial conference.  Plaintiff failed to appear in person for this conference, but the Court permitted Plaintiff to participate via telephone.  At that conference the Court set a schedule for Defendant's motion for judgment on the pleadings, a schedule to which Plaintiff agreed to abide.

On December 18, 2013, Defendant submitted a request for an extension of the briefing schedule, pursuant to which Defendant's motion for judgment on the pleadings would be due by January 23, 2014; Plaintiff's opposition would be due by March 24, 2014; and Defendant's reply would be due by April 7, 2014.  (Dkt. #21).  Plaintiff consented to Defendant's request, and the Court entered the revised briefing schedule.  (*Id.*).

Defendant filed its motion for judgment on the pleadings on January 24, 2014.  (Dkt. #22).  To date, Plaintiff has failed to file any opposition.  The Court communicated with Plaintiff on April 8, 2014, during which time he confirmed receipt of Defendant's motion and announced his intention not to respond.  By letter dated April 9, 2014, Defendant informed that Court it would not be submitting a reply in further support of its motion in light of Plaintiff's decision to not file an opposition, and requested that the Court consider the motion fully submitted.  (Dkt. #24).

**DISCUSSION**

**A.    Applicable Law**

**1.    Motions Under Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings

are closed — but early enough not to delay trial — a party may move for

judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard applied to a

motion for judgment on the pleadings is the same as that used for a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Sheppard* v. *Beerman*, 18 F.3d

147, 150 (2d Cir. 1994); *accord L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d

419, 429 (2d Cir. 2011).  When considering such a motion, a court should

"draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded

factual allegations to be true, and determine whether they plausibly give rise to

an entitlement to relief."  *Faber* v. *Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011)

(internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548

F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to relief if he alleges "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp* v.

*Twombly*, 550 U.S. 544, 570 (2d Cir. 2007); *see also In re Elevator Antitrust*

*Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require

heightened fact pleading of specifics, it does require enough facts to nudge

[plaintiff's] claims across the line from conceivable to plausible." (internal

quotation marks omitted)).

Even where such a motion stands unopposed, as it does here, "the

moving party must still establish that the undisputed facts entitle him to a

9

judgment as a matter of law." *Vt. Teddy Bear Co.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (applying this standard in the context of summary judgment); *see also Wellington* v. *Astrue*, No. 12 Civ. 3523 (KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013); *Martell* v. *Astrue*, No. 09 Civ. 1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010).  When a plaintiff proceeds *pro se*, as Plaintiff does in this case, the Court is "obligated to construe [his] complaint liberally."  *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### 2.    Review of Determinations by the Commissioner of Social Security

In reviewing the final decision of the SSA, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). "[A]n ALJ's credibility determination is generally entitled to deference on appeal."  *Selian* v. *Astrue,* 708 F.3d 409, 420 (2d Cir. 2013).

A court must uphold a final SSA determination to deny benefits unless that decision is unsupported by substantial evidence or is based on an incorrect legal standard.  *Selian,* 708 F.3d at 417 ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." (citing *Talavera* v. *Astrue*, 697 F.3d 145, 151 (2d Cir. 2012))); *see also id.* ("If there is substantial evidence to support the determination, it must be upheld.").  More than that, where the findings of the

SSA are supported by substantial evidence, those findings are "conclusive."
*Diaz* v. *Shalala,* 59 F.3d 307, 312 (2d Cir. 1995) ("The findings of the Secretary
are conclusive unless they are not supported by substantial evidence." (citing
42 U.S.C. § 405(g))).

"[S]ubstantial evidence is more than a mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate to support a
conclusion." *Selian,* 708 F.3d at 417 (internal quotation marks omitted).  The
substantial evidence standard is "a very deferential standard of review — even
more so than the clearly erroneous standard." *Brault* v. *Social Security Admin.,*
*Comm'r,* 683 F.3d 443, 448 (2d Cir. 2010).  To make this determination —
whether the agency's finding were supported by substantial evidence — "the
reviewing court is required to examine the entire record, including
contradictory evidence and evidence from which conflicting inferences can be
drawn. *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur*
v. *Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

In order to qualify for disability benefits under the Act, a claimant must
demonstrate his "inability to engage in substantial gainful activity by reason of
any medically determinable physical or mental impairment which can be
expected to result in death or that has lasted or can be expected to last for a
continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*
*also Butts* v. *Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004).  The claimant must
also establish that the impairment is "of such severity that [the claimant] is not
only unable to do his previous work but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Further, the disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

The SSA employs a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520(a)(1) ("This section explains the five-step sequential evaluation process we use to decide whether you are disabled.").  The Second Circuit has described the five-step analysis as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [*per se*] disabled.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian*, 708 F.3d at 417-18 (citing *Talavera*, 697 F.3d at 151).  "The claimant bears the burden of proving his or her case at steps one through four," while the Commissioner bears the burden at the final step.  *Butts*, 388 F.3d at 383.

## B.    Analysis

Applying the applicable standards, the Court finds no basis to overturn the Commissioner's decision.  The record wholly supports the conclusion that

the ALJ's decision was based on the correct legal standard and supported by substantial evidence.

The ALJ squarely identified the two issues for his determination: (i) whether Plaintiff was disabled under Sections 216(i) and 223(d) of the Act; and (ii) whether Plaintiff's status requirements of Sections 216(i) and 223 were met. (SSA Rec. 11). The latter issue can be disposed of in short order: The ALJ found that Plaintiff's earnings record showed the he had acquired sufficient quarters of coverage to remain insured through December 31, 2014, and thus met the insured status requirements. (*Id.*). There is no reason to doubt the accuracy of this determination.

Proceeding to the primary issue — whether Plaintiff was disabled — the ALJ applied the correct legal standard by employing the five-step evaluation mandated under the regulations. *See* 20 C.F.R. § 404.1520(a). Starting with step one, whether Plaintiff is engaged in substantial gainful activity, the ALJ noted that "'[s]ubstantial work activity' is work activity that involves doing significant physical or mental activities," while "'gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized.'" (SSA Rec. 12 (citing 20 C.F.R. § 404.1572(a), (b))). If an individual is engaged in substantial gainful activity, he is deemed not disabled. 20 C.F.R. § 404.1520(a)(i).

The ALJ determined that Plaintiff had not been engaged in substantial gainful activity since May 22, 2010, because after the onset of Plaintiff's alleged disability, his work activity did not rise to the level of substantial gainful

13

activity.  (SSA Rec. 13).  This conclusion is well-supported by Plaintiff's

testimony.  Plaintiff testified at the hearing that although he did engage in work

activity, the work had been minimal, amounting to approximately one day per

week for which Plaintiff received around $20 per hour.  (*Id.* at 26).  Because it

was not possible to verify the amount of work that Plaintiff performed, the ALJ,

giving Plaintiff the benefit of doubt, assumed that the amount of work that

Plaintiff completed fell below substantial gainful activity levels.  (*Id.* at 13).

        Having determined that Plaintiff was not engaged in substantial gainful

activity, the ALJ appropriately moved on to step two of the analysis.  Under

step two, the ALJ assessed whether Plaintiff had a medically determinable

impairment that was "severe" or a combination of impairments that was

"severe."  20 C.F.R. § 404.1520(c).  "An impairment or combination of

impairments is 'severe' within the meaning of the regulations if it significantly

limits an individual's ability to perform basic work activities."  (SSA Rec. 12

(citing 20 C.F.R. § 404.1521 and Social Security Rulings ("SSR") 85-28, 96-3p,

and 96-4p)).  Conversely, "[a]n impairment or combination of impairments is

'not severe' when medical and other evidence establish only a slight

abnormality or a combination of slight abnormalities that would have no more

than a minimal effect on an individual's ability to work."  (*Id.*).  If a claimant

does not have either a severe medically determinable impairment or a

combination of impairments, he is not disabled.  (*Id.*).

        It was at this step of the analysis that the ALJ determined that Plaintiff

did not meet his burden.  Specifically, the ALJ found that there were "no

medical signs or laboratory findings to substantiate the existence of a medically

determinable impairment." (*Id.* at 13).  Because the ALJ found that Plaintiff

was not disabled at step two of the analysis, he need not have proceeded to the

remaining steps.  *See* 20 C.F.R. § 404.1520(a)(4) ("If we find that you are

disabled or not disabled at a step, we make our determination or decision and

we do not go on to the next step."); *Whiting* v. *Astrue*, No. 12 Civ. 274 (TCE),

2013 WL 427171, at *2 (N.D.N.Y. Jan. 15, 2013) ("[The five-step] model is

'sequential' in that when a decision can be made at an early step, remaining

steps are not considered.").

To reach the conclusion that Plaintiff was not disabled, the ALJ identified

that the Act defined disability as "the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental impairment

that can be expected to result in death or which has lasted or can be expected

to law for a continuous period of not less than 12 months." (SSA Rec. 13).  The

"'impairment must result from anatomical, physiological, or psychological

abnormalities that can be shown by medically acceptable clinical and

laboratory diagnostic techniques." (*Id.*; *see also* 20 C.F.R. § 404.1527(a)(1)).

The regulations, however, make clear that "under no circumstances may the

existence of impairments be established on the basis of symptoms alone." (SSA

Rec. 14; *see also* SSR 96-4p ("A 'symptom' is not a 'medically determinable

physical or mental impairment' and no symptom by itself can establish the

existence of such an impairment.")).  In that regard, the ALJ explained:

> [R]egardless of how many symptoms an individual alleges, or how
> genuine the individual's complaints may appear to be, the

existence of a medically determinable physical or mental
impairment cannot be established in the absence of objective
medical abnormalities, i.e., medical signs and laboratory findings.

(SSA Rec. 14 (citing SSR 96-4p)).

Abundant evidence in the record supports the ALJ's conclusion. Indeed,
the record is devoid of any indication that Plaintiff's headaches and lower back
pain "significantly limit [his] physical or mental ability to do basic work
activities." 20 C.F.R. § 404.1521(a). Although the Court is sympathetic to
Plaintiff's conditions, his inability to prove that his impairments rendered him
disabled is fatal to his claim.

The ALJ's decision judiciously tracked the evidence that supported his
conclusion. He conducted a detailed assessment of the record, including the
medical evaluations spanning from 2006 to the time of Plaintiff's application
and Plaintiff's own subjective complaints. This included Plaintiff's 2006 EEG
and MRI examinations, which revealed no abnormalities. The ALJ's decision is
also amply supported by Dr. Philip's and Dr. Shah's evaluations, on which the
ALJ relied. (SSA Rec. 14-15). In June 2010, shortly after the onset of
Plaintiff's claimed disability, Dr. Philip concluded that in her medical opinion,
Plaintiff did not have "medical limitations … at [that] time." (*Id.* at 165). The
second evaluation from Dr. Shah in April 2011, although identifying certain of
Plaintiff's minimal limitations, likewise provided no indication that Plaintiff's
headaches and lower back claim precluded him performing basic work
activities. In point of fact, Dr. Shah concluded that Plaintiff "ha[d] *mild
limitations* for heavy lifting, carrying, and bending over." (*Id.* at 170 (emphasis

16

added)).  The opinions of Dr. Philip and Dr. Shaw constitute substantial

evidence to uphold the ALJ's decision.  *Hancock* v. *Barnhart*, 308 F. App'x 520,

521 (2d Cir. 2009) (summary order) ("The Commissioner's decision that

Plaintiff can perform his previous work is supported by substantial evidence.

Several doctor's opinions as to Plaintiff's residual functional capacity support

the ALJ's finding.").  The weight afforded to Dr. Philip's and Dr. Shah's opinions

was particularly appropriate in light of the absence of any conflicting medical

opinion that Plaintiff was disabled, as required under the Act.  *See Holloran* v.

*Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (medical opinions may constitute

substantial evidence, even in the face of contrary opinions by a claimant's

treating physician).

Finally, the ALJ took account of Plaintiff's subjective complaints of his

history of headaches that prevented his work activity, but found that there was

"no diagnosis of record since the alleged onset date and no treatment in many

years." (SSA Rec. 15).  This dovetails with Plaintiff's confirmation that he only

takes non-prescription medications. (*Id.* at 29).  Moreover, the ALJ considered

that Plaintiff testified to his ability to conduct some part-time work and to

perform his own self-care activities, as well as care for his home and elderly

mother. (*Id.* at 15).  In that regard, Plaintiff's own account of his stated

impairments supports the conclusion that he does not meet the standard of

disabled under the Act.  In any event, Plaintiff's subjective complaints alone

cannot establish conclusive evidence of a disability under the Act.  42 U.S.C. §

423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not

17

alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques."); *accord Betances* v. *Comm'r of Social. Sec.,* 206 F. App'x 25, 26 (2d Cir. 2006) (summary order)

The ALJ's decision to deny Plaintiff SSDI in the face of his subjective complaints was well within his discretion and entirely appropriate here, where Plaintiff provided no objective medical evidence to support his claim of impairment during the relevant time. *Arnone* v. *Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) ("[Plaintiff's] failure to present any medical evidence from [the relevant] period seriously undermines his contention that he was continuously disabled during that time."). In that regard, although the ALJ was "required to take [Plaintiff's] reports of pain and other limitations into account," he was "not required to accept [Plaintiff's] subjective complaint without question; he [was allowed to] exercise discretion in weighing the credibility of [Plaintiff's] testimony in light of the other evidence in the record." *Genier* v. *Astrue*, 606 F.3d 46, 69 (2d Cir. 2010) (internal citations omitted).

Having reviewed the entire record, the Court finds that the Commissioner's decision to deny Plaintiff's SSDI is free from legal error and supported by substantial evidence in the record. Accordingly, there is no reason for it to be overturned.

## CONCLUSION

For the foregoing reasons, the Commissioner's March 19 decision is affirmed and Defendant's motion for judgment on the pleadings is GRANTED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Opinion and Order to Plaintiff, to terminate Docket Entry No. 22, and to mark the case closed.

SO ORDERED.

Dated:       July 9, 2014
             New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge


*A copy of this was mailed by Chambers to:*
David McCreery
P.O. Box 212
Rock Hill, NY 12775